Parker C. J.
The long delay of judgment in this cause has been owing to doubts which arose from a mistake in the teste of the writ, occasioned by an oversight of the legislature in the act for establishing the Court of Common Pleas, which authorized the teste m the name of any justice of that court. *630 This being contrary to a provision in the constitution, which requires the teste of the first justice of the court who is not a party, must be considered as unavailing against the constitutional provision, which, though nothing more than a law, is paramount to any enactment of the legislature.
From the circumstance that this objection was not taken until after issue joined upon demurrer in the Court of Common Pleas, and that the counsel for the administrate! have declined arguing the point, we have reason to infer an unwillingness on the part of the administrator, resulting from regard to principles of justice, to intercept so just and equitable a claim as this action exhibits, by means of a mere technical difficulty. He was however in the course of his duty to present it to the Court, and we have given it the same attention that we should if it had been more seriously insisted on ; and we are happy now in being able to adopt the opinion unanimously, that it is too late, after the proceedings at the Court of Common Pleas, to sustain this objection on motion. The objection derives no peculiar force from being founded on a provision in the constitution, that being only an irrepealable law, and therefore analogous provisions of statutes relating to the forms of writs are applicable to the consideration of this case.
The question turns wholly upon this, whether a writ which issues without a teste, or with an improper teste, is a mere nullity ; or whether, though void in the sense of the law, it is not necessary that the party against whom it is enforced should claim the privilege of avoiding it by plea or motion, as in other cases of defective process.
It is sufficient to maintain the process in the form provided by law, that the party who is to be affected by it may show the defect and be discharged from the process at an early stage of the proceedings. It would be contrary to every principle of justice, that the party summoned into court to answer to a demand, should reserve his objections, until an expense has accrued, and perhaps the time for another suit has elapsed, and then spring his trap upon his adversary, who had a right to consider all objections to form waived by the progress of he cause.
*631 And courts in all countries have looked with disfavor upon. the delay in proposing objections, which, through adherence to form, would obstruct the course of justice, and it is for this reason, that all dilatory pleas, or those which amount only to an exception to the form of the process, are required to be exposed to the view of the court in the first stage, in order to save expense ; and it is justly considered, that when the opportunity :s passed, the party who might have taken the advantage, has chosen to submit to an investigation of the merits of his cause, having waived the exceptions which he might have taken. The books are full of cases to this effect, and it is hardly necessary to cite them. The case of Cooke v. Gibbs, 3 Mass. R. 195, and Prescott v. Tufts, 7 Mass. R. 209, may be looked to for the general principle, though not strictly analogous to the case before us. All irregularities in process must be taken advantage of by motion or plea in abatement in the first stage of the process, as appears by the following cases. Gordon v. Valentine, 16 Johns. R. 145 ; Gilliland v. Morrell, 1 Caines’s R. 154 ; Hart v. Weston, 5 Burr. 2586.
But it is suggested in the case of Cooke v. Gibbs, and it is undoubtedly a sound rule, that if a writ be bad and insufficient on the face of it, the Court may ex officio abate it. It does not follow that after the defendant has waived his exception and pleaded to the merits, the writ must be abated. Without doubt, if the motion had been early made, and, if overruled by the Court of Common Pleas, the party had pleaded the general issue, reserving his right to be heard on his motion, the Court would, if the defect were incurable, quash the writ ex officio; but they are not obliged to do this in the last stage of the proceedings, when the defendant has given no previous notice that he intended to make the objection.
Now nothing can be more precisely mere matter of form than the teste of a writ, although by some unaccountable means it was thought important enough to be provided for in the constitution of the State. We all know that in practice it is considered wholly insignificant; for the name of the proper officer may be inserted after the writ has been issued by the clerk, a *632 blank being left for that purpose ; or the name, if printed, may *3e erased and another inserted by the party or his attorney, and this being done before the service of the writ, it is considered as having issued with a proper teste, in pursuance of the constitution. In like manner a defective service of the writ, which might be a sufficient cause for ^cashing it if moved at the beginning, would be considered as waived after pleading to the merits.
That the teste of the writ is mere form appears from the foregoing remarks, and it was expressly holden so to be by Parsons C. J. in the case of Hawkes v. The Inhabitants of Kennebeck, 7 Mass. R. 463.
It is held also, that the want of an indorsement to a writ, which is expressly required by statute to be made before the writ shall be served, is cured by the implied waiver which results from pleading to the merits.
Upon the same principle it has been held in New York, that a writ which had issued and had been served w’thout any signature by the clerk of the court to which it was returnable, was not void, but was capable of being amended by the clerk’s putting his signature thereto after it was returned. Pepoon v. Jenkins, Coleman, 55. This is going much farther than the present case requires of us, for the signature of the clerk must be actually made by himself, and seems necessary to give the writ any validity ; whereas the name of the first justice is never supposed to be written by himself, but it is put in as a mere formality by the clerk, attorney or party who obtains the writ.
We think therefore we are well warranted in holding that the writ in this case, though originally defective, has been made good by the defendant himself, who ha? submitted to it without questioning its validity, through all bv* the very last stage of the process.
And we are satisfied with this result, even i1" it must be considered as judicially appearing to us, from ro^re inspection of the writ, that the teste was wrong ; but it ;s at least questionable whether we have any judicial knowledge of the fact. The Court are bound to take notice of all public acts *633 and laws, without doubt j[1] but whether they must know who are the justices or the chief justices of inferior tribunals, certainly admits of question. It was thought otherwise by the Court of King’s Bench in England, as appears by the case of Hook v. Shipp, Andr. 75, and 2 Str. 1080. That was error of a judgment in the Common Pleas. The error assigned was, that the writ of inquiry was tested Philip Lord Hardwicke, whereas he was then chief justice of the King’s Bench, and Sir John Willes was chief justice of the Common Pleas. And the whole court were of opinion that this was not cause of error, because the court was not obliged to take notice of any other judges of Westminster hall, besides those of its own bench, and this was matter purely of irregularity. And Chappie J. said that a wrong teste will not make a writ void, but irregular only. The judgment was therefore affirmed. Vid. Arundell v. Arundell, 1 Rol. Abr. 757, pl. 7, and Yelv. 33.
The only case which has been met with by us, that seems to support a contrary doctrine, is that of Hawkes et al. v. The Inhabitants of the County of Kennebeck, reported in 7 Mass. R. 461. The defendants moved the Court to abate the writ, because it bore teste of Joseph North, the first justice of the Common Pleas, who being an inhabitant of the county of Kennebeck was a party in the action ; and the constitutional provision was cited in support of the motion. The writ was abated, and thus it would seem that the objection made by the defendant’s counsel was maintained ; but upon a close examination of that case it does not appear that the writ was abated merely on account of a mistake in the teste. A more important question was involved, viz. whether the court in Kennebeck had any jurisdiction of the cause. This question Aimed in some measure upon the teste, but not entirely upon that; for the Chief Justice, in his opinion, says, as the teste of the writ is mere form, if the Court had a power of ordering the action to be tried in another county, they should be strongly inclined to do it; that is, that the teste would then *634 be disregarded ; and it was only because of the in convenience °f trying the cause in a county where every ont. was a party and might refuse to sit as a judge or a juror, that they thought it best to abate the writ. And the Chief Justice concludes, “ It is therefore our opinion that the motion must prevail, and the writ be quashed, because it was sued in the wrong county.”

Judgment according to the verdict.

 For the matters judicially noticed by the court, see 1 Stark. Ev. (4th Am. ed.) 400. n. (a,) and n. (1,) 252, n. (1).